CASE 48—PETITION EQUITY—NOVEMBER 16.

# Welch, &c., v. Spragins, Buck, & Co.

### APPEAL FROM JACKSON COURT OF COMMON PLEAS.

1. FRAUDULENT CONVEYANCE—LEVY OF ATTACHMENT.—Where in a suit by a creditor to set aside a conveyance by the debtor as fraudulent, the land conveyed is specifically described in the petition, it is sufficient in levying an attachment upon the land to give a general description of the land in the levy.

2. CLERICAL MISPRISION.—A mistake in a judgment as to the date from which it is made to bear interest is a clerical misprision for which there can be no reversal until there has first been a motion in the lower court to set aside the judgment.

3. HUSBAND AND WIFE—WIFE'S EQUITY.—The mere fact that the wife's money has been invested in land conveyed to the husband is not sufficient to entitle her to an equity as against the husband's creditors, in the absence of any agreement by the husband to invest the money for her benefit.

4. HOMESTEAD.—Where land claimed as a homestead was purchased by the debtor, subsequent to the creation of the debt to which it is sought to be subjected, the debtor is not entitled to the exemption, although the land was purchased with the proceeds of a tract of land in another State, owned and occupied as a home by him at the time the debt was created, no part of the land thus owned being exempt as a homestead under the statute of the State in which it was located.

E. E. HOGG FOR APPELLANTS.

1. The return upon the attachment does not describe the attached property with sufficient certainty to identify it, and, therefore, the levy is not good. (Civil Code, secs. 203, 212, 217.)

   In an action upon a return of "no property" the description of the property in the petition gives a lien, but in this case the attachment must give the lien, if a lien is had. (Martz v. Pfeifer, 80 Ky., 600; Trabue v. Conners, 84 Ky., 283; 80 Ky., 239.)

2. As the proceeds of the Virginia homestead were invested in the land in contest, appellants, even if the conveyance had been to the husband, would have been entitled to the homestead exemption.

Welch, &c., v. Spragins, Buck & Co.

Therefore the conveyance to the wife was not a fraud upon cred-
itors. (80 Ky., 152.)

2. The land was paid for partly with money that ought to have be-
longed to the wife, and the conveyance was, therefore, not fraud-
ulent; nor would it have been though the wife had not furnished
any part of the money. (4 Ky. L. R., 991.)

3. It was error to give interest from the first day of January, 1890,
when it appeared that some of the goods were purchased during
the year 1890.

KNOTT & EDELEN for appellees.

1. It appears from the evidence that before a homestead right at-
taches in Virginia, it is necessary for the claimant to make his
claim a matter of record by filing a declaration in the clerk's of
fice, and as this was not shown to have been done, the court be-
low was right in assuming that the appellants had no home-
stead right even in Virginia.

2. But even if the homestead right existed there, it did not continue
in Kentucky to the prejudice of existing debts. (Ky. Stats., sec.
1702; Caldwell v. Seivers, 85 Ky., 38.)

3. The return on the attachment was good. A minute description
of the property is not required. (White v. O'Bannon, 86 Ky., 93.)

4. If there was any mistake as to the date from which interest was
allowed, it was merely a clerical misprision, and there can be no
reversal therefor until there has first been a motion in the lower
court to correct it. (Clark v. Finnell, 16 B. M., 329; Johnson v.
Bank of Ky., Duv., 521; Wilson v. Barnes, 13 B. M., 330.)

JUDGE GRACE delivered the opinion of the court.

This is an appeal by W. F. Welch and wife from a judg-
ment of the Jackson Circuit Court, setting aside as fraudu-
lent a deed made on the third day of August, 1890, by one
Rodes to R. J. Welch, the wife of W. F. Welch, and subject-
ing the land embraced in same, being a small tract of some
thirty-five acres, to the payment of a debt of $786.59, due by
W. F. Welch to appellees, Spragins, Buck & Co. Waiving
some minor matters, as that the levy of the attachment did
not contain an accurate description of the land, though it

did describe it in general terms, and, besides, it was particularly set out, and the deed under which it was held referred to in the petition, which we think sufficient under the law, complaint is also made of the date from which the debt is adjudged to bear interest. In this the court seemed to fix interest from an average date, suit being on account. As to this matter, however, no motion has been made to correct same as a clerical misprision, and hence it can not be available on this appeal, even if error.

The material defense, however, is that in any event, if the wife did not own this land in her own right, which is claimed on the ground that she once owned some money used by her husband in the purchase of a tract of land in Virginia (the deed to which, however, was taken and held by the husband in his own right), and on the further claim that the money received for that tract of land when sold, or a part of the same, was invested in this land. This claim is unsupported by any sufficient allegation of any contract or agreement embracing all these various transactions, whereby only could any equity be reserved to the wife.

The distinctive claim on which, in argument, counsel for appellants rely, is that this land was exempt as a homestead, W. F. Welch and wife being, at the time of the levy of the attachment, *bona fide* housekeepers, residing on the land sought to be made liable.

To the strictly legal claim for homestead it may be answered that the debt sued on by appellees was created and existed before the purchase of this land in Kentucky, the debts having been created prior to the 14th day of March, 1890, and this land not having been bought until the 3d day of August, 1890. So the claim for homestead is directly in

the face of the Kentucky statute of homestead. (See 16th section of same.) [Ky. Stats., sec. 1702.]

Appellants seek, however, to avoid the letter of this section by saying that lately they were residents of Scott county, Virginia, and *bona fide* housekeepers, residing on a small piece of land owned in that county and State, which they sold on the 15th of April, 1890, and that the money received for same was invested in this land; that they were entitled to their homestead in Virginia, and, therefore, that the spirit of our homestead act should be so extended as to waive or avoid the letter, and to permit them to hold this land as a homestead.

The allegation that they were entitled to a homestead in Virginia is denied and the homestead law of Virginia has been given in evidence.

From this we find that while their statute does not appear to embrace the provision of the 16th section of our statute of homestead, in declaring that the benefits shall not apply as against any debt created before the purchase of same, yet we find another provision in their statute, doubtless answering the same purpose. It is as follows: After declaring by section 3630 a homestead in favor of every householder residing in that State to the extent of $2,000, then by section 3631 provides: "That in order to secure the benefit of the exemption of the real estate under the preceding section, the householder shall, by a writing signed by him, and duly admitted to record, to be recorded as deeds are recorded in the county or corporation wherein such real estate is, declare his intention to claim such benefit and select and set apart the real estate to be held by him as exempt and describe the same with reasonable certainty, affixing to the de-

scription his cash valuation of the estate so selected and set apart."

The equity and justice of this provision just quoted is manifest, as by it good faith and fair dealing between man and man are secured, and that under its operation a man may not obtain a fictitious or delusive credit.  While the policy of the law seems to be to secure to the householder a homestead exempt from the claims of his creditors, yet it leaves this matter in the option of the householder himself.  It does not undertake to force it upon him.  Unless he chooses to accept the same, and to make manifest his acceptance by the public declaration, duly acknowledged and recorded in the county or corporation where the land is situated, then he can not claim it.  Unless so made the creditor has a right to look to the possessions of the householder, and to extend credit on the faith of same.  Where this selection is made, then he has fair notice and extends credit at his peril.

It is not alleged by appellant, nor is it shown by the record, that this necessary declaration of intent to claim the property in Virginia as a homestead had ever been made or recorded as required by the statutes. Another limitation upon this right of homestead under the Virginia statutes is that same shall cease when the householder ceases to be a citizen of the State of Virginia.  Uuder the operation of these several provisions quoted from the Virginia Statutes, the same result is doubtless reached in that State that is obtained in Kentucky under the operation of the 16th section of our statute.

It is to be further noticed that the deed under which appellant claims the homestead in Virginia was executed by some of his kinspeople in Kentucky on the 15th day of May, 1889, and acknowledged on same day and so certified by the

clerk of the Jackson County Court, yet that it was never pre-sented for record to the clerk of the Scott County Court, in Virginia, until the 15th day of April, 1890, and that being the same day on which appellant sold the same land to John H. Mead, and from which sale, and through and by the purchase money received by appellant for same it is sought to trace the fund into this land bought by appellant in Kentucky in August, 1890. In all this it is clear that there was neither legal nor equitable right of homestead in Virginia, whereby it is, or would be, possible to base any equitable transfer of such a right, and to impress it upon this land in Kentucky, bought, as we have seen, after the creation of the debts sued for.

It is further to be observed that the charge of fraud is made by appellee against appellant in the purchase of this land, and in having the deed made to his wife. This charge is abundantly supported by the evidence in the cause, it being shown that appellant, who was a merchant, doing business in Scott county, Virginia, and a part of whose goods at one of his stores being attached, he, therefore, on the 28th day of April, 1890, made an assignment of what purported to be his goods and merchandise, at Welchburg, Virginia, where he resided, yet that, in some way not satisfactorily explained by appellant, considerable quantities of goods and merchandise were soon thereafter shipped into Kentucky for the use and benefit of appellant or his wife, and some of these goods are shown to bear the brand or mark of appellees in this case, who sold to appellant these goods, and for the price of which, unpaid, this suit was brought. Doubtless these things largely influenced the chancellor below in making up his judgment in this case, and disinclined him to seek in the record for any equity which he might engraft on

the homestead law as enacted by the legislature of Kentucky, so as to enlarge its operation beyond the letter of the law as written.

Wherefore, perceiving no error in the judgment below, same is affirmed.